IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| WINDOLN G. HASTIE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:04-21923-MJP-BM |
| v. ) | |
| ) | |
| CENTRAL CAROLINA ) | **REPORT AND RECOMMENDATION** |
| TECHNICAL COLLEGE, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This action was filed by the Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et. seq.. Plaintiff is a former employee of the Defendant Central Carolina Technical College.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on November 21, 2005. After having received an extension of time to respond, Plaintiff filed her memorandum in opposition to the Defendant's motion on January 16, 2006. Defendant's motion is now before the Court for disposition.[1]



---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

1

## **Background and Evidence**[2]

Plaintiff is an African-American female who was hired by the Defendant as an associate teacher in mathematics in 1979. Plaintiff's Deposition, p. 8. Plaintiff taught in the Developmental Studies and General Education Program. Id.  Plaintiff was initially employed part-time, but became a full-time instructor in the early 1990s. Plaintiff's Deposition, p. 78; Owens Deposition, p. 22. Plaintiff essentially taught remedial math (non-credit courses), which was part of the Development Studies/Transitional Studies Program. Plaintiff's Deposition, p. 78; Davids Deposition, p. 14; Owens Deposition, p. 22. Plaintiff has at all times been responsible only for teaching developmental math courses, a position which only requires a Bachelor's Degree. Plaintiff's Deposition, p. 78; see Plaintiff's Exhibit 3 [Position Description].

Plaintiff was appointed Academic Department Head for Developmental Studies Mathematics on June 1, 1991, and served in that capacity until June 30, 1994. Plaintiff's Deposition, p. 75. The Defendant's Developmental Studies Departments were all consolidated in July 1994, at which time Plaintiff was reassigned to a full-time Developmental Studies math teaching position, where she continued to serve until 1998. Plaintiff's Deposition, pp. 78-79.  In 1998 the Developmental Studies Program was consolidated into the General Education Department, at which time Plaintiff was transferred to the Mathematics Department.

The Mathematics Department was Chaired by Cheryl Davids, who was Plaintiff's immediate supervisor. Margaret Owens was Dean of Business and General Education, and in this

---

[2]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).



capacity supervised both Davids and the Plaintiff. Directly above Owens was Ann Cooper, Vice President of the College. Cooper had supervisory authority over Owens, Davids, and the Plaintiff. See Davids Deposition, pp. 18-20, 76.

It is undisputed that Plaintiff could not teach anything but transitional math classes because she did not possess a Masters Degree with 18 semester hours in mathematics. Davids Deposition, p. 135, see Plaintiff's Deposition, p. 78. In October 2000, Plaintiff received a notice from Owens that she would need to obtain her Masters Degree with 18 graduate hours in mathematics so that she could comply with the requirements of the Southern Association of Colleges and Schools (SACS). Plaintiff's Exhibit 6. Owens testified that SACS requires that all General Education mathematics teachers possess a Masters Degree with 18 hours in math; Owens Deposition, p. 24; and a deadline of May 2003 for Plaintiff to complete these SACS requirements was set. Plaintiff's Exhibit 7 [Professional Development Plan]. Of course, Plaintiff was not a General Education mathematics teacher, as all she had ever taught were developmental math courses. However, Owens and Davids testified that the number of developmental math courses offered by the Defendant had steadily declined, and that they needed Plaintiff to obtain her Masters Degree so that she could teach courses other than remedial courses. Owens Deposition, pp. 46, 82-83; Davids Deposition, pp. 16-17, 37, 135.

At the time Plaintiff received this notice from Owens, she had been taking classes at the University of South Carolina on a provisional admission basis while she was waiting to take the Graduate School Entrance Test (GRE). Plaintiff thereafter took the GRE in the spring of 2001. See generally, Plaintiff's Deposition, pp. 21-22, 34. In January 2003, the Defendant extended its deadline for Plaintiff to meet the SACS requirements to December 2003. See Plaintiff's Exhibit 8



[Professional Development Plan]. However, on July 22, 2003, Plaintiff was summoned to a meeting and told that her performance was substandard in the areas of instructional development, teaching performance, profession development, and instructional management. Plaintiff's Deposition, pp. 93, 100-101; see also Plaintiff's Exhibit 9 [Warning Notice of Substandard Performance dated July 22, 2003]. Prior to that time, Plaintiff had never before received a "below standards" rating on a performance appraisal in her twenty-three (23) years of teaching at the College. Plaintiff's Deposition, p. 93.

Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission (SCHAC)[3] on September 12, 2003, alleging that she was being discriminated against in the terms and conditions of her employment on the basis of her race. Plaintiff's Exhibit 10. Shortly thereafter, Plaintiff received a second notice of substandard performance on September 19, 2003 for failing to demonstrate progress towards obtaining her Masters. Plaintiff's Exhibit 11. On December 18, 2003, Plaintiff was called to a meeting in Vice President Cooper's office. When she arrived, Rolanda Stover, the Defendant's Human Resources Manager, was also present, and Plaintiff was informed by Cooper that she was being terminated. Plaintiff's Deposition, pp. 172, 206.

After receiving her right to sue letter, Plaintiff filed this action in United States District Court.

---

[3]As South Carolina is a deferral state, Plaintiff could file her administrative claim with SCHAC, instead of with the Equal Employment Opportunity Commission (EEOC). Nelson v. Lockheed Missiles and Space Co., No. 97-1430, 1997 WL 727609 at **1 n. 1 (4th Cir. November 24, 1997); E.E.O.C. v. Hansa Products, Inc., 844 F.2d 191, 192 n. 1 (4th Cir. 1988) (quoting 42 U.S.C. § 2000e-5(e)) ["A deferral state is one 'which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice.'"]; see S.C.Code Ann. § 1-13-90, et. seq., as amended.

4



**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

**I.**

**(Race Discrimination Claim)**

In her first cause of action, Plaintiff claims that she was terminated because she is an African-American. Plaintiff's termination claim is for disparate treatment, which requires proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). Plaintiff has not presented any direct evidence of race discrimination;[4] however, the absence of direct evidence of discrimination is not fatal to Plaintiff's claim, as direct proof of discrimination rarely exists in this type of case. In such a situation, indirect

---

[4]Direct evidence of race discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996); Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); see Williams v. General Motors Corp, 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943 (1982).

5



evidence of discrimination may be presented through the McDonnell Douglas framework.[5]

The United States Supreme Court articulated a three-part procedure for analyzing discrimination cases in McDonnell Douglas. First, Plaintiff must establish a prima facie case of discrimination. Once a prima facie case has been established, a rebuttable presumption is created that the employer unlawfully discriminated against the Plaintiff. Second, once this presumption has been established, the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for its actions. Third, if the employer shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the employer were really based on Plaintiff's race. McDonnell Douglas Corp., 411 U.S. at 802-805; Texas Dep't of Community Affairs, 450 U.S. at 252-256; Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, the Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

**Prima facie case.** In order to establish a prima facie case for her termination claim, Plaintiff must show that (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered an adverse employment action; and (4) similarly situated employees not

---

[5] Consideration of Plaintiff's claim under the so-called "mixed-motive" analysis is also now allowed even though Plaintiff has presented only circumstantial, or indirect, evidence of discrimination. Hill v. Lockheed Martin Logistics Mgt., Inc., 354 F.3d 277, 284-285 (4th Cir. 2004); see also Mereish v. Walker, 359 F.3d 330, 339-340 (4th Cir. 2004); Machinchick v. PB Power, Inc., 398 F.3d 345, 352 (5th Cir. 2005) [ADEA]. Previously, consideration of a claim under the mixed motive analysis was only proper in direct evidence cases. Here, however, Plaintiff has only argued her claim under the traditional McDonnell Douglas proof scheme.



in her protected class received more favorable treatment, she was replaced in her job by someone from outside of her protected class, or there is some other evidence giving rise to an inference of unlawful discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 506-510 (1993); Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994); Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); Hughes v. Bedsole, 48 F.3d 1376, 1384 (4th Cir. 1995).[6] It is undisputed that Plaintiff is a member of a protected class, and that she suffered an adverse employment action (termination). Defendant argues, however, that Plaintiff has failed to present evidence sufficient to establish either the second or fourth prong of her prima facie case.

With respect to the second prong, Defendant notes that Plaintiff was informed that she needed to pursue her "professional development" (i.e., essentially obtain her Masters Degree) as early as May 2000, and was reminded of this requirement in September 2002. See Plaintiff's Deposition, pp. 9-11. It is also undisputed that Plaintiff had not obtained her Masters Degree as of the time of her discharge in December 2003. Defendant argues that this evidence shows that Plaintiff could not meet the qualifications for her job at the time of her termination, and that her inability to complete all of the requirements for her job shows that she was not performing her job satisfactorily. However, when considering this prong of the prima facie case, the question is whether Plaintiff was performing her job satisfactorily *prior* to the event(s) which resulted in her termination. *Cf.* Brown v. Chicago Transit Authority, No. 97-7041, 1999 WL 495622 at *5 (N.D.Ill. June 28, 1999) [Plaintiff's general job performance, not the specific incident(s) which may have precipitated his termination, is the proper question to consider in determining whether Plaintiff can establish the satisfactory

---

[6]The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged. Ennis v. National Ass'n of Business and Education Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995).

7



performance element of his prima facie case]; Crosby v. Federal Signal Corp., No. 97-4967, 1998 WL 603125 at *5 (N.D.Ill. Sept. 4, 1998); McDonald v. Delta Airlines, Inc., 94 F.3d 1437, 1441-1442 (10th Cir. 1996); Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996). Here, Defendant does not contest that, up until shortly before her termination, Plaintiff had been employed by the Defendant for twenty-three (23) years without ever having received a "below standards" rating on a performance appraisal. During that time, Plaintiff had also served as Academic Department Head for Developmental Studies Mathematics, as Interim Dean for the Division of Arts and Sciences, and had received the South Carolina Technical Educator's Association Award for Educator of the Year in her teaching category for 1995 and 1997. Plaintiff's Deposition, pp. 75, 93; Plaintiff's Exhibits 2, 4 & 5. This evidence is sufficient for purposes of summary judgment to satisfy the requirements of the second prong of Plaintiff's prima facie case.

With regard to the fourth prong, Plaintiff contends that the way in which she was required to obtain a Masters Degree, and her resulting termination, was due to racial animus. Specifically, Plaintiff argues that white faculty instructors who did not have Masters Degrees were not placed under the same scrutiny and pressures to meet the Masters Degree requirement. See Plaintiff's Deposition, pp. 123-124. Defendant contends that Plaintiff's allegation is without merit, arguing that all full-time faculty instructors in the Business and General Education Department of the Defendant have a Masters Degree with at least 18 graduate hours in their area-specific discipline, including that all full-time instructors in the math department have met the Masters Degree requirement. Owens Deposition, p. 18; Davids Deposition, p. 36. However, Plaintiff testified that there were other faculty members who did not have a Masters Degree with 18 hours in their teaching discipline, and Owens admitted that there were some teachers who were not fully credentialed



according to the SACS requirements at the time Plaintiff was terminated. Plaintiff's Deposition, p. 123; Owens Deposition, pp. 16-17. Cooper also testified that some other teachers at the College do not have Masters Degrees, noting that they weren't required for teachers at the "non-bachelorette level" in classes that are "not intended for transfer....". Cooper Deposition, p. 28. Of course, those are similar to the types of courses taught by the Plaintiff.[7]

Plaintiff has also presented evidence to attempt to show that she was diligently pursuing her Masters Degree requirements. Despite having major spinal surgery in December 2001 which, together with the rehabilitation period, sidelined her for almost a full semester; Plaintiff's Deposition, pp. 33, 37; she applied for full admission to the USC Graduate Program in 2002, and enrolled in a graduate mathematics course at USC in the fall of 2002. Plaintiff's Deposition, pp. 16-17, 37-38. Plaintiff had also enrolled in several other courses which were later cancelled for lack of enrollment by the Institution. Plaintiff's Deposition, pp. 106-107, 113. Plaintiff also points out that, during that period of time, she was able to complete nine (9) graduate night courses towards her Masters Degree while also teaching eleven (11) developmental mathematics courses during both the day and evening hours as well as maintaining her office hours. Plaintiff's Deposition, pp. 111, 148; see also Davids Deposition, pp. 126-127. Nevertheless, the Defendant issued two negative performance appraisals indicating that she was not making sufficient progress towards completing her Masters Degree requirements. Because Plaintiff's surgery had required her to miss almost an entire academic semester, she asked Cooper if she could get an extension of time within which to complete her degree. Cooper denied her request. Plaintiff's Deposition, p. 107. Plaintiff completed

---

[7]Plaintiff has also submitted a copy of the Defendant's 2003-2004 student handbook, noting that in the section listing the faculty and their credentials there were eleven (11) faculty members that did not have a Masters Degree. Plaintiff's Exhibit 12, at pp. 188-191.

9



her MS in Management in March 2004, and testified that she could have completed her Masters Degree and the 18 credit hours in mathematics Defendant was requiring by the summer of 2004. Plaintiff's Deposition, p. 169.

Finally, to fortify her inference that race played a role in how she was being treated, Plaintiff testified that in 2003 she was working on a joint project with a white male faculty member, and when the project was not completed on time Plaintiff was disciplined in writing for not fulfilling her responsibilities, whereas the white male was not disciplined in any way. Plaintiff's Deposition, p. 125. Defendant does not dispute this occurrence, but contends this differential treatment was justified because Plaintiff was experiencing the other performance deficiencies alleged by the Defendant. Davids Deposition, p. 84. Plaintiff also received a reprimand for being tardy to class while white co-workers did not receive such reprimands. Plaintiff's Deposition, p. 127, and Exhibit 18. Again, Defendant does not dispute Plaintiff's evidence, but argues that Davids (the individual who counseled Plaintiff) was not the supervisor of those white employees. Davids Deposition, p. 148.

While the undersigned agrees that the applicable caselaw requires the same supervisor to be involved in disciplinary actions when a plaintiff is complaining of disparate treatment, considering all of the evidence just discussed in the light most favorable to the Plaintiff, the undersigned finds it sufficient to establish the fourth prong of Plaintiff's prima facie case and to give rise to an inference of discrimination for purposes of summary judgment. See Texas Dep't of Community Affairs, 450 U.S. at 253 [The burden of establishing a prima facie case is not onerous.]; see also Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991) [when considering whether a Plaintiff has presented a prima facie case under the McDonnell Douglas proof scheme, a Court should "...resist the temptation to become so entwined in the intricacies of the proof scheme [set out in McDonnell



Douglas] that [it] forget[s] that the scheme exists solely to facilitate determination of 'the ultimate question of discrimination vel non'."].

**Legitimate, non-discriminatory reason.** When a Plaintiff establishes a prima facie case, it falls to the Defendant to then set forth a legitimate, nondiscriminatory reason for its actions. Lovelace v. Sherwin Williams Co., 681 F.2d 230, 239 (4th Cir. 1982). Here, the Defendant has presented evidence to show that Plaintiff was terminated for failure to timely complete her Masters Degree requirements, as it had requested. This evidence is sufficient for the Defendant to meet its burden of production to show a legitimate, non-discriminatory reason for its decision to terminate the Plaintiff's employment, and the Court must therefore turn to consideration of the final prong of the McDonnell Douglas analysis. EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [ADEA case] [The defendant's burden is only one of production, not of persuasion].

**Pretext.** Where a Defendant rebuts the employee's inference of discrimination by demonstrating a legitimate, non-discriminatory reason for the employment decision, in order to prevail the Plaintiff/employee must demonstrate by a preponderance of the evidence that the employer's proffered reason is a mere pretext for discriminatory conduct. To make this demonstration, Plaintiff must show that "but for" her employer's intent to discriminate against her because of her race, she would not have suffered the adverse employment action. EEOC, 955 F.2d at 941; Conkwright, 933 F.2d at 234. "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole . . . must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [race animus].'" LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993)(citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111

11



S.Ct. 2828 (1991)); see Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000).

After careful consideration of the evidence and arguments presented, the undersigned finds and concludes that Plaintiff has presented sufficient evidence of pretext to survive summary judgment on her race discrimination claim. Considered in the light most favorable to the Plaintiff, the evidence shows that Plaintiff was a long-time employee of the Defendant who had performed her job well during the course of her employment. The evidence further shows that the only courses taught by the Plaintiff were developmental studies courses, which did not require a Masters Degree. Further, the Defendant adopted the SACS requirement on its own, and the deadline for Plaintiff to obtain her Masters Degree with teaching hours requirement was imposed by the Defendant, not by any outside source. Owens Deposition, pp. 15, 21, 32-33; Davids Deposition, p. 137. By September 2000, Plaintiff had accumulated 24 of the required 30 hours towards her Masters Degree and was scheduled to take the remaining 6 credit hours she needed to complete her Masters Degree in September 2003. Plaintiff's Deposition, pp. 77, 149. Although Plaintiff's supervisors issued two adverse employee appraisals during that period of time indicating that Plaintiff was not making satisfactory progress toward obtaining her degree by the Defendant's own self-imposed deadline, Davids conceded that, at the time of the issuance of the second notice of substandard performance, Plaintiff could have completed her Masters Degree requirements in the three months left on her deadline. Davids Deposition, p. 122. Plaintiff has also submitted evidence of differential treatment of white and African-American employees, as well as evidence to show that SACS did not even require Plaintiff to obtain a Masters Degree, since she taught only remedial classes; Plaintiff's Deposition, p. 29; Plaintiff's Exhibit 13 [SACS Requirements, § 4.8.2.2]; creating an inference that the Defendant's argument that Plaintiff was required to have a Masters Degree in her teaching field

12



in order for the school to meet its SACS requirements is false.[8]  Plaintiff has also submitted evidence to show that she could have been credentialed under SACS even without a Masters Degree, if the Defendant had been so inclined.  Plaintiff's Deposition, Exhibit 13 [SACS Requirements § 4.8.2.1].

In sum, while there is certainly evidence in the file to support the Defendant's claim that it had a valid reason for the employment decision taken, the undersigned does not find that "[n]o reasonable trier of fact could conclude" that the actions taken were the result of a racial animus. Spratley v. Hampton City Fire Dept., 933 F.Supp. 535, 542 (E.D.Va. 1996), aff'd, 125 F.3d 848 (4th Cir. 1997);  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) [at summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor"]; see LeBlanc, 6 F.3d at 843 ["[I]ndirect evidence of discriminatory motive may do [as long as it is] sufficient for a reasonable factfinder to infer that the employer's decision...was motivated by [retaliatory animus]"]; see Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2105-2109 (2000) [setting forth the general proposition that where a plaintiff presents a prima facie case together with sufficient evidence to raise an inference that the employer's asserted justification for the employment decision is false, a trier of fact can conclude that the employer unlawfully discriminated].  Therefore, Defendant's motion for summary judgment with respect to Plaintiff's race discrimination claim should be denied.

---

[8]While Defendant contends that it wanted all of its teachers to have Masters so that they could teach all mathematics courses, a requirement the Defendant was certainly within its rights to impose, Plaintiff testified that roughly 75% of the mathematics courses offered by the Defendant are remedial in nature.  Plaintiff's Depostion, pp. 29; cf. Davids Deposition, pp. 153-154.

13



**II.**

**(Retaliation Claim)**

In her second cause of action, Plaintiff alleges that she was retaliated against after she complained that she believed she was being discriminated against because of her race, and because she filed an administrative charge of race discrimination with SCHAC.  Section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3(a)[setting forth the standard for a retaliation claim], provides as follows:

> It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases under Title VII are subject to the same requirements of proof as are applicable to disparate treatment claims.  Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989).  "The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence.  Such a prima facie case consists of three elements:  (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action."  Id.; Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997).  Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions.  If the employer can produce a legitimate, non-discriminatory reason for its actions, the

14



employee must demonstrate that the Defendant's proffered reason is pretextural. Id.

Plaintiff clearly engaged in protected activity both when she had her attorney send a letter to the College in February 2003 complaining about discrimination on the basis of race; see Cooper Deposition, pp. 23-24; and when she filed her administrative charge with SCHAC. Laughlin v. Metropolitan Airports Authority, 952 F.Supp. 1129, 1133 (E.D.Va. 1997), aff'd, 149 F.3d 253 (4th Cir. 1998) [filing an administrative charge of discrimination is protected activity]; Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981) [informal protests such as voicing complaints to employers constitute protected activity]; see also Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1313 (6th Cir. 1989); Morris v. Boston Edison Co., 942 F.Supp. 65, 71 (D.Mass. 1996). As previously noted, it is also uncontested that the Defendant took an adverse employment action against the Plaintiff. As for a causal connection between these events, the evidence reflects that the Defendant issued Plaintiff adverse employee evaluations and then ultimately terminated Plaintiff's employment within a short time span after Plaintiff had engaged in one or both of these protected activities. This evidence establishes sufficient causation for purposes of Plaintiff's prima facie case. *Cf.* Gordon v. Southern Bells, Inc., 67 F.Supp.2d 966, 988 (S.D.Ind. 1999)["A short time span between protected activity and an adverse employment action may be sufficient to prove a causal connection between the two events. . . . A close temporal connection between the two events is generally enough to satisfy the third element of the prima facie case."];see also Texas Dep't of Community Affairs, 450 U.S. at 253 [the burden of establishing a prima facie case is not onerous]; Proud, 945 F.2d at 798.

Defendant has, of course, satisfied its burden of producing a legitimate, non-discriminatory reason for its actions. See discussion, supra. The undersigned concludes, however,



that Plaintiff has presented sufficient evidence of pretext to go forward with her retaliation claim. The evidence shows that Plaintiff had been a teacher at the College for over two decades performing well in her position prior to the beginning of 2003. In 2003, after having engaged in protected activity in both February and then later in September, she was given poor performance evaluations, was denied an extension of time to complete her Masters Degree even though the Defendant was under no time constraints, she was reprimanded for a project on which she worked with another employee who was not reprimanded, and then was ultimately terminated. Considered in the light most favorable to the Plaintiff, this evidence is sufficient to avoid summary judgment on this claim. Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago, 104 F.3d 1004, 1014 (7th Cir. 1997) [suspicious timing constitutes circumstantial evidence to support a claim of discrimination]; see LeBlanc, 6 F.3d at 843 ["[I]ndirect evidence of discriminatory motive may do [as long as it is] sufficient for a reasonable factfinder to infer that the employer's decision...was motivated by [retaliatory animus]"]; Muhammad v. Klotz, 36 F.Supp.2d 240, 243 (E.D.Pa. 1999) ["Thus, at the summary judgment stage the only inquiry is the threshold one of determining whether there is a need for a trial, that is, 'whether the evidence presents a sufficient disagreement to require submission to [the jury] or whether it is so one-sided that one party must prevail as a matter of law'"], citing Anderson, 477 U.S. at 250-252. Therefore, Defendant's motion for summary judgment with respect to Plaintiff's retaliation claim should be denied.

## **Conclusion**

Based on the foregoing, it is recommended that the Defendant's motion for summary



judgment be **denied**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

June 30, 2006

17

